UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 08-22266 (ASD) |
| JESSICA S. FITZGERALD, | ) | CHAPTER 7 |
| DEBTOR | ) | RE: DOC. I.D. NO. 31 |

APPEARANCES:

Paul L. Rubin, Esq.　　　　　　　　　　　　Counsel for Debtor
135 East Center Street
Manchester, CT 06040


Steven E. Mackey, Esq.　　　　　　　　　Counsel for United States Trustee
Office of the U.S. Trustee,
The Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510

**MEMORANDUM AND ORDER DENYING
UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE**

ALBERT S. DABROWSKI, Chief United States Bankruptcy Judge

**I.    INTRODUCTION**

The question presently before the Court is whether, under the totality of the circumstances test of Bankruptcy Code §707(b)(3)(B), the Debtor's petition for relief under Chapter 7 of the Bankruptcy Code indicates an abuse of that chapter. For the reasons set

forth hereinafter, the Court concludes that it does not.

## II.  JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant case by virtue of 28 U.S.C. §1334(a); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2).

## III.  BACKGROUND

Before the court is the Motion of the United States Trustee to Dismiss Debtor's Chapter 7 Case Pursuant to 11 U.S.C. §§707(b)(1),(2) and (3) (hereafter the "Motion"), Doc. I.D. No. 31.  The Motion came before the Court for a hearing on September 30, 2009 (hereafter, the "Hearing"). The Court finds the following facts from (1) the testimonial and documentary evidence received at the Hearing, and (2) its judicial notice of the files and records of this case.

Jessica Fitzgerald (hereafter, the "Debtor") is a social worker employed by the State of Connecticut Department of Children and Families for the last ten years.  On November 14, 2008 (hereafter, the "Petition Date"), she commenced the captioned bankruptcy case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code. With her petition, the Debtor also filed Form 22A (hereafter, the "Means Test"), Doc. I.D. No. 4.  The Means Test indicated that, as of the Petition Date, the Debtor's "current monthly income" of $6,344.15 exceeded the state median for a one-person household; her monthly allowable expense deductions determined in accordance with IRS standards were

$6,228.86; and her "monthly disposable income under §707(b)(2)" of $115.29 would be sufficient to pay less than 5% of her unsecured debt through a five-year Chapter 13 plan. Thus, no presumption of abuse arose under §707(b)(2)[1] and the United States Trustee (hereafter, the "UST") bears the burdens of proof and production that the Debtor's bankruptcy would be an abuse of Chapter 7.

The Debtor's former marriage ended in divorce in 2006. During her marriage, the Debtor had co-signed for several credit cards used by her ex-husband to provide financing for his business. The business eventually failed and, under the terms of the divorce, the Debtor was responsible for much of the resulting debt.[2] Following the divorce, the Debtor, who received title to the marital residence, refinanced the mortgage thereon and borrowed an additional $53,000.00 from her father in order to consolidate and pay down some of the accumulated credit card debt. The Debtor managed to get by, paying her mortgage, student loans, living expenses and some of the debt to her father until, in the Spring of 2007, the interest rate under her variable rate mortgage increased from 5.2% to 10.3%. With her monthly mortgage payment increasing from $1,340.00 to $2,180.00, the Debtor found herself unable to continue making the required payments. Facing foreclosure, she moved to an apartment in Manchester, Connecticut. A few months later, she found a less expensive apartment in Hartford and moved again. Although her rent for the Hartford apartment was only $860.00, she later discovered it to be in an unsafe area, besieged by

---

[1] The Motion had initially sought dismissal under both §707(b)(2) and (3). At the hearing on the Motion, counsel for the UST stated that he was not pursuing the claim under §707(b)(2) (based upon the means testing criteria).

[2] The Debtor has not specified the breakdown of the business and consumer portions of such debt, and does not dispute that, for purposes of §707(b)(1), her debts are "primarily consumer debts."

3

gang violence. It was while she was living in the Hartford apartment that the Debtor filed her petition. Seeking a safer environment, the Debtor, post-petition, relocated again. She presently rents an apartment in Bloomfield, Connecticut, where she resides with her boyfriend, Michael Williams (hereafter, "Williams"). The Debtor testified that Williams, at that time, was working two jobs and supporting three small children; and that they had agreed from the outset that the Debtor would pay $1,050.00 and Williams $400.00 towards the monthly rent of $1,450.00. Williams has since been laid off from his second job and has, thus far, contributed only $250.00 towards the rent.

Additional facts will be indicated as they relate to the discussion that follows.

### IV.    DISCUSSION

One of the major changes effected by passage of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act (hereafter, "BAPCPA") was the adoption of the means test of Bankruptcy Code §707(b)(2). If a debtor's income as of the petition date, reduced by expense allowances determined in accordance with certain I.R.S. standards, exceeds a certain threshold amount, a presumption arises that such petition demonstrates an abuse of Chapter 7. In the captioned bankruptcy case, the Debtor's means test indicated that her income was below the applicable threshold; thus, no such presumption arose. BAPCPA also added a new section, §707(b)(3), which provides, in relevant part:

> In considering . . . whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption [of abuse under the means test] does not arise or is rebutted, the court shall consider . . . whether . . . (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

11 U.S.C. §707(b)(3).

Courts considering dismissal of a Chapter 7 case under the totality of the circumstances test of §707(b)(3)(B) have continued to employ the same pre-BAPCPA approach affirmed by the Second Circuit in In re Kornfield, 164 F.3d 778 (2d Cir. 1999),[3] applying a two-part test, looking first to whether the Debtor has the ability to pay a substantial dollar amount or percentage of her unsecured debts, and then to any other relevant circumstances to determine whether there were any mitigating or aggravating factors.[4] See, e.g. In re Salerno, 408 B.R. 554, 558 (Bankr. D.Conn. 2009); In re Colgate, 370 B.R. 50, 56 (Bankr. E.D.N.Y. 2007).

### A. *Ability to Pay a Substantial Dollar Amount or Percentage of Unsecured Debt.*

In considering a debtor's ability to pay, courts typically look to what the debtor could pay creditors under a hypothetical Chapter 13 plan. In re Salerno, supra, 408 B.R. at 558. Although BAPCPA defines an above-median debtor's projected disposable income under a Chapter 13 plan by reference to the means test criteria, see 11 U.S.C. §1325(b)(3), the

---

[3] The Second Circuit Court of Appeals described Kornfield as "a paradigm of the case that Section 707(b) was designed for: debtors enjoying a substantial income but seeking to transfer the cost of an unnecessarily extravagant lifestyle to creditors." 164 F.3d at 784.

[4] As noted by United States Bankruptcy Judge Robert L. Krechevsky in In re Marcoux, 301 B.R. 381, 385 (Bankr. D. Conn. 2003):

> The Second Circuit, in In re Kornfield, 164 F.3d 778, 783 (2d Cir. 1999), adopted a "totality of circumstances" approach in determining whether to dismiss a case under §707(b) for substantial abuse. Noting that "a division among courts exists over the degree of emphasis to be placed on the ability of the debtor to repay debts out of future income," the Second Circuit declined to "spell out in greater detail the precise content of the proper totality of circumstances test in this circuit." Id. at 783. It is fair to say, however, that Kornfield not only explicitly rejected a per se test, based solely on a debtor's gross income, then advanced by the U.S. Trustee, but Kornfield did not adopt, although it noted, the per se test employed by the Eighth and Ninth Circuits, that a debtor's ability to pay his or her debt, standing alone, supports a conclusion of substantial abuse. Id. at 783.

(Footnote omitted).

5

totality of the circumstances test under §707(b)(3)(B) considers not what the Debtor would be *required* to pay under a hypothetical Chapter 13 plan, but what the Debtor would be *able* to pay thereunder. In re Baeza, 398 B.R. 692, 697 (Bankr. E.D.Cal. 2008). Thus, the Court looks to the Debtor's actual income and expenses to determine her ability to pay.

The UST does not dispute the reasonableness of the Debtor's monthly expenses, itemized in Exhibit 1, of $4,185.00. Utilizing the Debtor's payroll advices for the most recent eight weeks, the UST calculated the Debtor's monthly income, after payroll deductions for taxes, insurance, etc., as $4,335.58. The UST argues that the $150.58 excess of such income over such expenses understates the Debtor's ability to pay creditors, however, because it fails to include amounts for an income tax refund, overtime pay and Williams' contribution towards rent. The Debtor, on the other hand, contends that such amount actually overstates the "surplus" that she could devote to paying creditors because her itemized expenses do not take into account expenses for necessities, like dental work and car maintenance and repairs, that she has been postponing while she tried to meet her other obligations.

Noting that the Debtor received a 2008 federal income tax refund of $3230.00, the UST argues that her withholding is excessive and that she has an additional $269.17 available to pay creditors. The Debtor points out that, although her withholding remains at the same level as in 2008, she received a tax refund in 2008 only because, at that time, she still owned her own home and was able to deduct mortgage interest and property taxes from her taxable income. Having since lost her house in foreclosure, she now rents an apartment and does not anticipate a tax refund. The Court accepts the Debtor's

6

explanation and finds that anticipation of future tax refunds would be too speculative.

The UST produced evidence that the overtime pay received by the Debtor in her most recent payroll advices is considerably lower than in prior years or the earlier part of 2009. The Court finds credible the debtor's explanation that, in light of the present economic conditions, employees of the State of Connecticut have had to make certain concessions, including no pay raises, very little overtime, and several unpaid furlough days per year.[5]

Finally, the parties dispute whether and by how much the Debtor's "surplus" should be increased to account for Williams' contribution towards the rent. The Court finds credible the Debtor's testimony that, because Williams had three children to support, she and Williams had an agreement that Williams would pay only $400.00 per month towards the rent; but that, having lost his second job, Williams had actually contributed only $250.00 thus far. Lacking evidence of the particulars of Williams' financial situation and his prospects for future employment, the Court finds somewhat speculative both the UST's position that Williams should contribute one-half of the rent and the Debtor's position that Williams is presently unable to make any contribution towards rent. The Court finds it reasonable, in light of Williams' continued employment at his primary job and the relatively small amount of his agreed-upon share of the rent, for the Debtor to expect him to pay $400.00 per month as agreed.

---

[5] Based upon the figures and methodology utilized by the UST, the Court finds that, if the Debtor's overtime pay were eliminated in its entirety, her monthly take-home pay would be reduced to $4,219.60 (base pay of $75,608.00 per year, reduced by $1,160.00 for four unpaid furlough days per year, and divided by 12 equals $6,204.00 per month; after deducting 27.6% for taxes withheld and $272.10 deduction per month for benefits, Debtor's monthly take-home pay would be $4,219.60). After deducting her expenses of $4,185.00, she would have a "surplus" of only $34.60, rather than $150.58 per month.

The addition of $400.00 to the Debtor's monthly "surplus" of $150.58, calculated <u>supra</u>, brings that amount to $550.58. The Debtor also testified, however, that, as a result of her recent financial problems, she had postponed much needed dental work and automobile maintenance and repairs and had included no allowance for such in her estimated expenses. She estimates the out-of-pocket cost for the dental work at $3,400.00. In addition, her car needs replacement of two tires, valves, and brakes, as well as a tune up and regular oil changes. The Court finds that providing for such dental and auto work, as well as for miscellaneous unanticipated expenses such as are likely to arise from time to time, reduces the Debtor's available "surplus" by another $200.00, bringing it to approximately $350.00. Under a hypothetical Chapter 13 plan, the trustee's fee and/or other administrative expenses would be about 10%, reducing the amount available to pay creditors to $315.00. The term of a chapter 13 plan for an above-median debtor is 60 months, and the total amount that the Debtor would be able to pay unsecured creditors over such term would be $18,900.00, or about 13% of unsecured claims.

### B.    Other Relevant Circumstances

As previously noted, the Court's determination that a Chapter 7 Debtor may have the ability to pay some portion of unsecured claims through a hypothetical Chapter 13 plan does not end its inquiry under the totality of the circumstances test of §707(b)(3). See <u>In re Moutousis</u>, __ B.R. __, 2009 WL 3210297 (E.D. Mich. Sept. 28, 2009) (bankruptcy court, under totality of circumstances, could not dismiss Chapter 7 case as an abuse based solely on debtor's ability to pay creditors; reversed and remanded for consideration of other factors).

"A totality of circumstances inquiry is equitable in nature . . . ." Kornfield, 164 F.3d at 784. And, "[s]uch an inquiry cannot be reduced to the mechanical application of mathematical formulae, but requires consideration of all the relevant circumstances, such as:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of [her] ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith."

In re Marcoux, 301 B.R. 381, 386 (Bankr. D.Conn. 2003) (footnotes omitted), citing, In re Green, 934 F.2d 568, 572 (4th Cir. 1991).

The circumstances precipitating the Debtor's filing of her Chapter 7 petition were primarily (1) her divorce and the resulting debt, much of which was incurred by her ex-husband to finance a failing business and a problem with alcohol; and (2) a sudden increase in the amount of her mortgage payment as her variable interest rate jumped from 5.2% to 10.3%. Not only are there no indications of any eve of bankruptcy cash advances or consumer purchases, but, on the contrary, the Debtor took extraordinary steps to try to minimize and manage her debt. Realizing that she could no longer afford the mortgage payments for her house, she gave up that home, and relocated several times to try to find

9

a safe, affordable apartment rental. She postponed needed dental work, as well as regular maintenance and needed repairs on her car. She borrowed from family to consolidate and pay down some of her outstanding debt. The UST concedes that the Debtor's budgeted expenses are not excessive or unreasonable. The Court has found that, with the adjustments noted, <u>supra</u>, her income and expenses indicate her true financial condition. Finally, there is no allegation or evidence that the Debtor's petition was not filed in good faith.

## V.    CONCLUSION

The Court, having found that (i) the Debtor has the ability to pay only a small fraction of unsecured claims from her future earnings over the next five years, and (ii) that all of the other relevant factors weigh heavily in the Debtor's favor, concludes that the relief sought by the Debtor under Chapter 7 of the Bankruptcy Code is not an abuse of that chapter. Accordingly,

**IT IS HEREBY ORDERED** that the United States Trustee's Motion requesting the Court to dismiss Debtor's Chapter 7 bankruptcy case is **DENIED**.

Dated: November 13, 2009                                                                BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge